UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| RICHARD DE GAETANO, | ) | |
| --- | --- | --- |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 1:08-cv-00294-JAW |
| JOHN J. LAPINSKI, et al., | ) ) ) | |
| Defendants | ) | |

**RECOMMENDED DECISION
RE: SECOND MOTION FOR ATTORNEY FEES
(Doc. No. 95)**

This matter was referred to me for a recommended decision on the issue of attorney fees, following a post-judgment disclosure proceeding wherein Digga Downeast, LLC, as trustee, was ordered to turn over to the judgment creditor a certain real estate parcel in Jonesport, Maine. I ordered the parties to supplement their original memoranda by addressing three separate issues: (1) how can DeGaetano obtain attorney fees from the judgment debtor for fees spent as the result of a disclosure proceeding against a third party, when the sole basis to award those fees would be pursuant to a note that was merged into a judgment and the judgment was subsequently discharged in bankruptcy; (2) pursuant to what authority is a trustee liable for attorney fees under a trustee disclosure process such as this one; and (3) how did the judgment debtors schedule the assets of the dissolved LLC during their bankruptcy proceedings.[1] The judgment creditor now concedes that there is no basis for an award of post-judgment attorney fees against the trustee

---

[1] The third issue does not necessarily need to be answered in order to resolve this motion. The judgment creditor did include a copy of the bankruptcy schedules (Doc. No. 100-1) and the stock of the LLC is listed as having 0.00 value, even though the real property owned by that LLC apparently holds some value to this day. The judgment debtors raised this issue first in their initial response to the motion for attorney fees when they stated that the LLC had been dissolved in 2005 and the judgment creditor should have known that fact, as though it was somehow significant to this proceeding. I still do not know what, if any, significance the dissolution of the LLC has to these proceedings or the bankruptcy proceedings, but I see no reason to pursue what is apparently a dead end in terms of resolving the pending motion.

(Supp. Mem. at 3, Doc. No. 100: "The plaintiff withdraws its claims for additional attorneys' fees against Digga . . .")  I now recommend that the Court deny the motion for an award of additional post-judgment attorney fees against John and Linda Lapinski.

**Discussion**

DeGaetano is seeking attorney fees for collection efforts against a third party that occurred after the primary debtors, John and Linda Lapinski, received a discharge in bankruptcy. Obviously, if these are "new," undischarged post-bankruptcy debts that John and Linda Lapinski have a legal obligation to pay, the bankruptcy discharge does not relieve them of any new debts incurred after the bankruptcy discharge.  In this case, however, DeGaetano maintains that the Lapinskis' legal obligation to pay these attorney fees arises solely under the unsecured note that merged into a judgment issued by this Court; a judgment subsequently discharged in bankruptcy.

In support of his position DeGaetano cites a string of Ninth Circuit bankruptcy opinions dealing with the award of post-petition attorney fees.  These opinions are all distinguishable from the present case.  The majority of these opinions involve secured creditors in a foreclosure scenario.  See, e.g., Siegel v. Fed. Home Loan Mortg. Corp., 143 F.3d 525, 531 (9th Cir. 1998). If the attorney fees are payable from the sale of the mortgaged property, not the personal assets of the judgment debtors, it is totally inapposite to the current situation.  Furthermore, many of those cases which have revived a contractual attorney fees provision after discharge, such as Siegel, have done so in the context of a lawsuit brought by the discharged debtor on the note containing the attorney-fees provision.  The Siegel court was careful to note that while Siegel's "bankruptcy did protect him from the *results* of his past acts, including attorney fees associated with those acts, it did not give him carte blanche to go out and commence new litigation about

2

the contract without consequences." Id. at 534 (emphasis added). The Lapinskis have not brought suit against DeGaetano in connection with this note during or after their bankruptcy petition. This case was a simple pre-bankruptcy suit by DeGaetano on an unsecured note and the post-petition attorney fees now in dispute were the direct result of that past act, *i.e*., the default of the now discharged debt on the note.

Another case relied upon by DeGaetano, IAG Federal Credit Union v. Burne, No. CA 97-2456, 12 Mass. L. Rep. 432 (Mass. Super. 2000), is a state law case premised on the proposition that the debtor's reorganization plan included both the terms of the mortgage and the terms of the mortgage note to secure payment; thus, the debtor was not relieved of his obligations regarding attorney fees under the note. That case, like Siegel, involved reviving an attorney fees provision in a secured note that was made part and parcel of a bankruptcy reorganization. In contrast, DeGaetano did not enter the bankruptcy arena with a secured note for which the debtors obtained a discharge as part of the reorganization; he came to the bankruptcy court with a pre-petition judgment that the bankruptcy court fully discharged.

The primary cases relied upon by DeGaetano that do not involve mortgage foreclosures are In re Lees, Bankr. No. 2-03-06143-PHX-CGC, Adversary No. 2-03851, 2007 WL 1992127 (Bankr. D. Ariz. July 5, 2007) (divorce litigation), and In re Conley, No. 98-30339, 1999 WL 33490228 (Bankr. D. Idaho Dec. 10, 1999) (easement dispute). Those cases involve post-bankruptcy-petition litigation either commenced or protracted by the conduct of the debtor and either a statutory or common law right to an award of attorney fees, independent of any promissory note. They provide no guidance about the ability of a judgment creditor to revive a contract term of a note after the entry of judgment on the note, pre-petition, and subsequent discharge of the judgment during bankruptcy, as was the case here.

3

In this particular case the Promissory Note, Exhibit A, Doc. No. 1-1, provided that if the note was in default and placed with an attorney for collection, "then the undersigned agree to pay all reasonable attorney fees and costs of collection." Costs of collection were clearly a contingent liability under the promissory note. Pursuant to this provision DeGaetano received an underlying judgment against the Lapinskis which included the amount of $15,084.10 in attorney fees and he was awarded $503.29 in costs. DeGaetano now seeks an additional $18,109.54 in attorney fees from the Lapinskis representing the fees incurred by DeGaetano from June 9, 2010,[2] the date on which the judgment debtors were discharged in bankruptcy, to the present. DeGaetano also seeks an additional $706.33 in costs as a result of these disclosure proceedings.[3]

DeGaetano argues two additional points. First he maintains that Lapinski did everything within his power to thwart DeGaetano's collection efforts regarding the Jonesport real estate owned by Digga Downeast, LLC. While it is true that John Lapinski did not initially appear in response to the disclosure subpoena issued to him as Digga Downeast, LLC's registered agent, he did appear after this Court issued process to secure his personal appearance. He did not file any motions, raise any argument, or engage in any delay tactics in this Court once his appearance was secured. One could hardly say, based on the court proceedings, that he impeded the orderly turnover of the real estate in question. Linda Lapinski, to the best of my knowledge, has had nothing to do with these proceedings. The conduct in this action of which I am aware does not

---

[2] The supporting materials include billing records that begin on June 29, 2009, but including activity prior to June 2010, revealing the total amount expended to be $26,118.41. Counsel has subtracted those amounts from his request.

[3] It appears clear that Digga Downeast, LLC is liable for the costs associated with the trustee disclosure proceeding, even though this Court's judgment does not recite an award of costs. See 14 M.R.S.A. § 2701 (a trustee who fails to disclose is liable for all costs associated with the action). It also appears clear that the Lapinskis cannot be liable for costs incurred prior to June 9, 2010, because even under the judgment creditor's theory of the case those amounts were discharged with the principal debt. The maximum exposure regarding costs for the Lapinskis is $285.17.

begin to approach the type of abusive litigation tactics described in either the divorce action or the easement litigation cited by the plaintiff.

DeGaetano's second additional point is that the First Circuit case of <u>In re Burrell-Richardson</u>, 356 B.R. 797 (B.A.P. 1st Cir. 2006), supports his position that the right to collect attorney fees in connection with the discharged debt survives bankruptcy. In that case, the judgment debtor argued that since the judgment creditor had reduced the debtor's student loan note to judgment pre-petition, the judgment, as opposed to the actual student loan note, was dischargeable. The Court determined that it would look to the "true nature" of the debt and that, by definition, that debt was non-dischargeable absent undue hardship. <u>Id.</u> at 800. Applying that case to the present facts, it becomes clear that the true nature of this debt is based upon a promise to pay in the note itself and the note, previously reduced to judgment, did not survive the bankruptcy. The note's liabilities, as well as the then-existing judgment, were fully discharged. In my view, DeGaetano is not entitled to an additional award of attorney fees for his efforts against a third-party trustee[4] and the First Circuit Bankruptcy Panel's analysis regarding the "true nature" of the debt reduced to judgment is instructive in that regard.

**Conclusion**

Based upon the foregoing, I RECOMMEND the Court DENY Plaintiff's Second Motion for Attorney Fees (Doc. No. 95).

---

[4] Neither party has cited, nor did my limited research undercover, any Maine law addressing the issue of whether conduct and resulting attorney fees solely attributable to a trustee's failure to disclose its retention of a debtor's assets are properly chargeable to the primary debtor under the note. The contractual provision calls for the payment of all "reasonable" costs of collection, and if a third-party trustee unreasonably, and without the involvement of the judgment debtor, increases attorney fees by failing to disgorge the debtor's assets, one wonders whether the judgment debtor should be expected to pay those fees in any event.

NOTICE

      A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

      Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

                                      /s/ Margaret J. Kravchuk
                                      U.S. Magistrate Judge

December 22, 2011